**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

GABRIEL FELIX MORAN,
 *Plaintiff-Appellant*,

v.

THE SCREENING PROS, LLC, a
California corporation,
 *Defendant-Appellee.*

No. 12-57246

D.C. No.
2:12-cv-05808-
SVW-AGR

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Submitted August 23, 2018*
Pasadena, California

Filed May 14, 2019
Amended November 21, 2019

Before: ANDREW J. KLEINFELD, MILAN D. SMITH,
JR., and JACQUELINE H. NGUYEN, Circuit Judges.

---

*The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Order;
Dissent to Order by Judge Kleinfeld;
Opinion by Judge Milan D. Smith, Jr.;
Partial Concurrence and Partial Dissent by Judge Kleinfeld

## SUMMARY[**]

### Consumer Reporting

The panel filed (1) an order amending its opinion, denying a petition for panel rehearing, denying on behalf of the court a petition for rehearing en banc, and providing that no further petitions would be accepted; and (2) an amended opinion and dissent in an action under the federal Fair Credit Reporting Act and California's Investigative Consumer Reporting Agencies Act and Unfair Competition Law.

Dissenting, Judge Kleinfeld wrote that because the amended majority opinion added language amplifying its holding, he dissented from the portion of the order providing that no further petitions would be accepted.

In its amended opinion, the panel reversed the district court's judgment in favor of defendant The Screening Pros, LLC, in a suit brought by Gabriel Moran, who was denied housing due to disclosures appearing in a tenant screening report. The district court dismissed in part and granted summary judgment in part.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The district court held that the ICRAA, which regulates "investigative consumer reports," was unconstitutionally vague as applied to tenant screening reports due to the ICRAA's overlap with California's Consumer Credit Reporting Agencies Act. The panel concluded that the district court's holding was foreclosed by *Connor v. First Student, Inc.*, 423 P.3d 953 (Cal. 2018), and The Screening Pros' new arguments in favor of dismissal of the ICRAA claims were waived. The panel reversed and remanded to the district court to consider the merits of the ICRAA claims and to decide whether Moran stated a UCL claim predicated on The Screening Pros' alleged ICRAA violations.

Reversing as to the FCRA claims, the panel held that 15 U.S.C. § 1681c(a) permits consumer reporting of a criminal charge for only seven years following the date of entry of the charge, rather than the date of disposition. Further, the dismissal of a charge does not constitute an adverse item and may not be reported after the reporting window for the charge has ended. The panel held that the date of a dismissal is merely the "date of disposition" of an indictment, which Congress specifically eliminated from the FCRA's list of events triggering the seven-year reporting window. The panel concluded that Moran sufficiently stated claims pursuant to the FCRA because the tenant screening report's inclusion of a 2000 charge fell outside of the permissible seven-year window. The panel remanded for further proceedings.

Concurring in part and dissenting in part, Judge Kleinfeld joined in Parts I and II of the analysis, addressing the ICRAA and UCL claims. Dissenting from Part III, addressing the FCRA claims, Judge Kleinfeld wrote that the dismissal of the charge was reportable under the plain language of the statute.

**COUNSEL**

Deepak Gupta and Peter Conti-Brown, Gupta Beck PLLC, Washington D.C.; Meredith Desautels, Lawyers' Committee for Civil Rights of the San Francisco Bay Area, San Francisco, California; Joshua E. Kim, A New Way of Life Reentry Project, Los Angeles, California; Devin H. Fok, Law Offices of Devin H. Fok, Alhambra, California; Craig Davis, Law Offices of Craig Davis, San Francisco, California; for Plaintiff-Appellant.

Michael J. Saltz, Colby A. Petersen, and Blair Schlecter, Jacobson Russell Saltz Nassim & de la Torre LLP, Los Angeles, California, for Defendant-Appellee.

Keith Bradley and Nandan M. Joshi, Attorneys; David M. Gossett, Assistant General Counsel; To-Quyen Truong, Deputy General Counsel; Meredith Fuchs, General Counsel; Consumer Financial Protection Bureau, Washington, D.C.; Theodore (Jack) Metzler, Attorney; John F. Daly, Deputy General Counsel for Litigation; Jonathan E. Neuchterlein, General Counsel; Office of the General Counsel, Federal Trade Commission, Washington, D.C.; for Amici Curiae Consumer Financial Protection Bureau and Federal Trade Commission.

Alison S. Hightower and Rod M. Fliegel, Littler Mendelson P.C., San Francisco, California, for Amicus Curiae National Multifamily Resident Information Council.

Karen K. McCay and Helene Simvoulakis-Panos, Pahl & McCay APLC, San Jose, California, for Amicus Curiae California Apartment Association.

Tanya Koshy, East Bay Community Law Center, Berkeley, California, for Amici Curiae East Bay Community Law Center; Asian Americans Advancing Justice - Asian Law Caucus; American Civil Liberties Union of Southern California; Bay Area Legal Aid; The California Reinvestment Coalition; The Center for Employment Opportunities; Drug Policy Alliance; Ella Baker Center; The University of California Hastings Civil Justice Clinic; Housing and Economic Rights Advocates; Legal Action Center; Legal Services for Prisoners with Children; The National Consumer Law Center; The National Employment Law Project; The National Housing Law Project; Public Good; Rubicon Programs; and Safer Foundation.

---

## ORDER

The opinion filed on May 14, 2019, is amended by the opinion and dissent filed concurrently with this order. The amendment to the opinion is as follows:

1. On page 22 of the slip opinion, the second full paragraph, replace:

> For the cited reasons, we hold that the seven-year reporting window for a criminal charge begins on the date of entry. We additionally hold that the dismissal of a charge does not constitute an adverse item and may not be reported after the reporting window for the charge has ended.

with the following:

> For the cited reasons, we hold that the seven-year reporting window for a criminal charge

begins on the date of entry. We additionally hold that the dismissal of a charge does not constitute an independent adverse item and may not be reported after the reporting window for the charge has ended. The date of a dismissal is merely the "date of disposition" of an indictment, which Congress specifically eliminated from the FCRA's list of events triggering the seven-year reporting window.

With these amendments, Judge M. Smith and Judge Nguyen have voted to deny the petition for panel rehearing. Judge Kleinfeld has voted to grant it. Judge M. Smith and Judge Nguyen have voted to deny the petition for rehearing en banc. Judge Kleinfeld has recommended granting it. The full court has been advised of the petition for rehearing en banc, and no judge of the court has requested a vote on it. Fed. R. App. P. 35.

The petition for panel rehearing and the petition for rehearing en banc are otherwise **DENIED**, and no further petitions will be accepted.

---

KLEINFELD, Senior Circuit Judge dissenting:

I dissent from the portion of the order providing that "no further petitions will be accepted." The majority opinion adds language amplifying its holding. A party or a judge on this court may have a different response on account of the majority's amplification of its holding. In addition, a party or judge on this court may have a response at this time different from their response before the amendment, on

account of the recent Seventh Circuit decision, *Aldaco v. RentGrow Inc.*, 921 F.3d 685 (7th Cir. 2019).

## OPINION

M. SMITH, Circuit Judge:

After being denied housing due to disclosures appearing in a tenant screening report, Plaintiff-Appellant, Gabriel Moran brought suit against Defendant-Appellee, The Screening Pros (TSP), alleging violations of the federal Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, California's Investigative Consumer Reporting Agencies Act (ICRAA), Cal. Civ. Code § 1786, and California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200.

The district court dismissed all but one cause of action and granted summary judgment on the remaining FCRA claim. We reverse the district court on all claims and remand for further proceedings.

## BACKGROUND

TSP provides tenant screening reports to property owners who desire to know certain information about potential tenants of their properties. The reports include both general character and creditworthiness information. In February 2010, Moran applied for housing with Maple Square Apartments (Maple Square), an affordable housing development. At Maple Square's request, TSP prepared a tenant screening report on Moran (Report), which disclosed four criminal matters in his background: a May 16, 2000 misdemeanor charge for being under the influence of a

controlled substance (2000 Charge), dismissed on March 2, 2004; two June 2006 charges for burglary and forgery, dismissed that same month; and a June 2006 conviction for misdemeanor embezzlement from an elder dependent adult. After reviewing the Report, Maple Square denied Moran's rental application due to his 2006 embezzlement conviction and, Moran alleges, the three dismissed charges.

In 2012, Moran instituted this action against TSP alleging six claims pursuant to the ICRAA,[1] two claims pursuant to the UCL,[2] and three claims pursuant to the FCRA.[3] The Report's inclusion of the 2000 Charge, later dismissed in 2004, served as the predicate offense of most of these claims.

---

[1] (1) Reporting adverse information that antedates the report by more than seven years in violation of California Civil Code section 1786.18(a); (2) failing to maintain reasonable procedures designed to avoid violations of section 1786.18 and assure maximum accuracy in violation of section 1786.20; (3) failing reinvestigate disputed consumer information in violation of § 1786.24; (4) failing to obtain proper certification in violation of section 1786.12(e); (5) failing to disclose the source from which the consumer information was obtained, particularly the court, in violation of section 1786.28; (6) failing to provide the requisite notices on the first page of its report in violation of section 1786.29.

[2] Engaging in (1) unlawful and (2) unfair business acts or practices in violation of California Business and Professions Code section 17200.

[3] (1) Reporting adverse information that antedates the report by more than seven years in violation of 15 U.S.C. § 1681c(a); (2) failing to maintain reasonable procedures designed to avoid violations of § 1681c and to assure maximum accuracy of the information in violation of § 1681e; and (3) failing to reinvestigate disputed consumer information in violation of § 1681i.

TSP moved to dismiss ten of the eleven claims, but did not seek dismissal of one claim pursuant to § 1681i of the FCRA—failure to reinvestigate disputed consumer information. The district court granted the motion for all ICRAA claims because it determined that the ICRAA was unconstitutionally vague as applied to tenant screening reports. The district court also granted dismissal of the UCL claims because it concluded that injunctive and restitutionary relief were not available to Moran. The court initially granted in part and denied in part the motion to dismiss the FCRA claims. Specifically, the court denied the motion for Moran's claim that TSP violated the FCRA by including Moran's 2000 Charge because more than seven years had passed since the charge was entered. On reconsideration, the district court reversed itself, and dismissed all of the challenged FCRA claims because it determined that the reporting period for a criminal charge begins on the "date of disposition" instead of the date of entry. The district court granted summary judgment on the remaining FCRA claim given its ruling that the Report "did not contain any obsolete information in violation of [§] 1681c." Moran timely appealed.

This case first came before us in 2012. After oral argument and submission of the case, we stayed proceedings pending the California Supreme Court's decision in *Connor v. First Student Inc.*, 423 P.3d 953 (Cal. 2018), because *Connor* addressed the question of whether the ICRAA is unconstitutionally vague due to a partial overlap with the Consumer Credit Reporting Agencies Act (CCRAA), Cal. Civ. Code § 178. Once the state proceedings concluded, the parties filed supplemental briefs discussing *Connor*. Upon receipt of the supplemental briefing, we again took this case under submission.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo a district court's dismissal for failure to state a claim. *Dougherty v. City of Covina*, 654 F.3d 892, 897 (9th Cir. 2011). We also review de novo issues of statutory construction. *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1131 (9th Cir. 2009). When California law is at issue, "[o]ur duty as a federal court . . . 'is to ascertain and apply the existing California law.'" *Munson v. Del Taco, Inc.*, 522 F.3d 997, 1002 (9th Cir. 2008) (quoting *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1479 (9th Cir. 1995)). "We are bound by pronouncements of the California Supreme Court on applicable state law." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 889 (9th Cir. 2010) (citing *Munson*, 522 F.3d at 1002).

## ANALYSIS

### I.  ICRAA Claims

In 1975, California enacted two statutory schemes: the CCRAA and the ICRAA. Cal. Civ. Code §§ 1785, 1786. The California legislature passed these statutes (which are modeled after the FCRA) to ensure that reporting agencies "exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." Cal. Civ. Code §§ 1785.1(c), 1786(b). The CCRAA regulates "consumer credit reports," defined as "any written, oral or other communication of any information by a consumer credit reporting agency bearing on a consumer's credit worthiness, credit standing, or credit capacity." Cal. Civ. Code § 1785.3(c). The ICRAA regulates "investigative consumer reports," originally defined as "a consumer report in which information on a consumer's character, general reputation, personal

characteristics, or mode of living is obtained through personal interviews." Cal. Civ. Code § 1786.2(c) (1975). The statutes were intended to cover separate information: the CCRAA governed creditworthiness, while the ICRAA governed character information. Cal. Civ. Code §§ 1785.3(c) (1975), 1786.2(c) (1975).

In 1998, the California legislature broadened the definition of investigative consumer reports to include consumer reports "obtained through any means," not just through personal interviews. Cal. Civ. Code § 1786.2(c). This expanded the reach of the ICRAA, and some consumer reports, including tenant screening reports, now qualified as both "consumer credit reports" and "investigative consumer reports."

Against this statutory backdrop, TSP argued that the ICRAA is unconstitutionally vague as applied to tenant screening reports due to the ICRAA's overlap with the CCRAA. Relying on California Court of Appeal decisions *Ortiz v. Lyon Mgmt. Grp., Inc.*, 69 Cal. Rptr. 3d 66, 75 (Ct. App. 2007) and *Trujillo v. First Am. Registry, Inc.*, 68 Cal. Rptr. 3d 732, 740 (Ct. App. 2007), TSP argued before the district court that it was not clear whether the ICRAA or the CCRAA governed tenant screening reports, which contained both creditworthiness and character information. Without the benefit of *Connor*, the district court agreed with TSP, and held that this lack of clarity rendered the ICRAA unconstitutionally vague as applied to tenant screening reports.

The California Supreme Court authoritatively foreclosed this argument in *Connor*. *Connor* recognized the overlap between the ICRAA and CCRAA but held that "[a]ny partial overlap between the statutes does not render one superfluous or unconstitutionally vague. They can coexist because both

acts are sufficiently clear . . . ." 423 P.3d at 959 (citing *United States v. Batchelder*, 442 U.S. 114, 123 (1979)). While *Connor* analyzed this issue as applied to employer background checks, we find that it has equal force in the context of tenant screening reports. The California Supreme Court specifically disapproved *Ortiz*—a case that held that the ICRAA was unconstitutionally vague as applied to tenant screening reports—finding that it failed to give meaning to the 1998 ICRAA amendment and instead "relied on the history of [the ICRAA and the CCRAA] as originally enacted." *Id* at 958. *Connor*'s analysis and disapproval of *Ortiz* compels a similar outcome for tenant screening reports.

In its supplemental brief, TSP raises two arguments for the first time to support the district court's dismissal of the ICRAA claims. First, TSP asserts that Moran's ICRAA claims are preempted by the FCRA, 15 U.S.C § 1681t(b). Second, TSP argues that the ICRAA, Cal. Civ. Code § 1786.52(a), prohibits lawsuits for the same act or omission addressed in pending claims pursuant to the FCRA.

"Generally, an appellee waives any argument it fails to raise in its answering brief." *United States v. Dreyer*, 804 F.3d 1266, 1277 (9th Cir. 2015) (en banc); *see Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir.2009). Yet, we have "discretion to make an exception to waiver under three circumstances: (1) 'in the "exceptional" case in which review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process,' (2) 'when a new issue arises while appeal is pending because of a change in the law,' and, (3) 'when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed.'" *Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318,

1322 (9th Cir. 2012) (citing *Bolker v. Comm'r*, 760 F.2d 1039, 1042 (9th Cir. 1985)).

TSP creatively contends that we should exercise our discretion under the second exception to consider these new arguments because they were only possible post-*Connor*. According to TSP, *Connor* "expressly confirms that [the] ICRAA was amended in 1998" after Congress expanded the FCRA and added a preemption provision which applies here. *Connor* also "mak[es] [the] ICRAA applicable for the first time since this case was filed." We find both arguments meritless, and TSP's new arguments waived.

*Connor* was not needed to prove that the California legislature amended the ICRAA in 1998. A cursory review of the statute's legislative history clearly shows the adoption of the 1998 amendment, which TSP itself cited in its answering brief. Thus, TSP was clearly aware of all facts and law needed to make its federal preemption argument at the time of initial briefing, and it should have done so if it wished to argue that point.

Alternatively, TSP claims that the ICRAA was not applicable after *Ortiz* and *Trujillo*,[4] so it did not think it necessary to present other statutory arguments. Prior to *Connor*, no California Supreme Court decision bound a federal court to find the ICRAA unconstitutionally vague. "In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as

---

[4] *Trujillo*, a California appellate court decision, was a companion case to *Ortiz* finding the ICRAA unconstitutional as applied to tenant screening reports. 68 Cal. Rptr. 3d at 740.

guidance." *In re Kirkland*, 915 F.2d 1236, 1239 (9th Cir. 1990). We were obligated to conduct an independent analysis framed by the doctrine of "constitutional doubt" that requires a "statute [] be construed, if fairly possible, so as to avoid . . . the conclusion that it is unconstitutional." *Almendarez-Torres v. United States*, 523 U.S. 224, 237 (1998) (quoting *United States v. Jin. Fuey Moy*, 241 U.S. 394, 401 (1916)). The ICRAA, then, remained potentially applicable in federal court, even as applied to tenant screening reports, and TSP should have raised alternate statutory arguments at the time of initial briefing.

Since the district court's holding is now foreclosed by *Connor*, and TSP's new arguments are waived, we reverse and remand to the district court to consider the merits of Moran's ICRAA claims.

## II. UCL Claims

The UCL regulates competition by prohibiting "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Even though "the scope of conduct covered by the UCL is broad, the remedies are limited" to injunctive and restitutionary relief. *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1008 (9th Cir. 2008) (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 943 (Cal. 2003)). Moran sought both forms of relief. The district court dismissed Moran's claim for injunctive relief holding that the FCRA preempts this remedy for a UCL claim predicated on an FCRA violation. The district court also dismissed his claim for restitutionary relief because disgorgement of profits is not an authorized remedy under the UCL.

While Moran does not appeal these conclusions, he argues instead that the UCL claims were also predicated on

TSP's alleged ICRAA violations.  The district court did not address these arguments, and instead, only analyzed Moran's UCL claims after concluding that the ICRAA was unconstitutionally vague.  Since we hold that the ICRAA is not unconstitutionally vague, we remand for the district court to decide in the first instance whether Moran has stated a UCL claim.

## III.     FCRA Claims

Moran appeals the district court's dismissal of his FCRA claims based upon the Report's inclusion of Moran's 2000 Charge.  While both parties agree that the 2000 Charge is classified as an "adverse item of information" and thus falls under § 1681c(a)(5), they disagree on which date triggers the seven-year reporting window—the date of entry of charge or the date of dismissal of charge—and thus, whether inclusion of the 2000 Charge was proper.  The district court recognized that this was an issue of first impression and while initially holding that the date of entry triggered the window, the court later found the "date of disposition" or date of dismissal to be the appropriate trigger.  We disagree, and hold that the district court's initial holding was correct: the date of entry triggers the seven-year window for a criminal charge.  Thus, we find that TSP improperly included the 2000 Charge in its Report since more than seven years had passed since its date of entry, but we make no finding as to willful noncompliance.[5]

---

[5] TSP alternatively argues that we should affirm the district court's dismissal of FCRA claims because Moran has not suffered an actual injury from alleged improper reporting since Maple Square relied upon Moran's properly included 2006 conviction when denying his application.  However, the statute explicitly permits recovery without proof of actual damages.  *See* 15 U.S.C. § 1681n(a)(1)(A) (allowing an

## A.  Background of the FCRA

Congress enacted the FCRA with the express purpose of ensuring that consumer reporting agencies (CRAs) provide information "in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b).  The FCRA seeks to protect consumers by limiting the type of information a CRA may disclose about an individual.  *See Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) ("The legislative history of the FCRA reveals that it was crafted to protect consumers from the transmission of inaccurate information about them . . . .").

The relevant portion of the original 1970 statute provided:

> [N]o consumer reporting agency may make any consumer report containing any of the following items of information:
>
> . . .
>
> (2) Suits and judgments which, from date of entry, antedate the report by more than seven years or until the governing statute of limitations has expired, whichever is the longer period.

---

award of "any actual damages sustained by the consumer . . . or *damages of not less than $100 and not more than $1,000*" if one willfully fails to comply with the statute) (emphasis added).  Accordingly, we cannot affirm on this ground.

. . .

> (5) Records of arrest, *indictment*, or conviction of crime which, *from date of disposition, release, or parole, antedate the report by more than seven years.*

> (6) Any other adverse item of information which antedates the report by more than seven years.

15 U.S.C. § 1681c(a) (1970) (emphasis added). Section 1681c(a)(5) originally included a clear trigger date for indictment records: the date of disposition. In 1990, the Federal Trade Commission (FTC), the agency responsible for enforcing the FCRA, released a report providing its guidance and interpretations of the FCRA. *See* FTC, *Commentary on the Fair Credit Reporting Act*, 55 Fed. Reg. 18, 804 (May 4, 1990) (1990 Commentary). The 1990 Commentary confirmed, "if charges are dismissed at or before trial, or the consumer is acquitted, the date of such dismissal or acquittal is the date of disposition." *Id.*

However, Congress substantially altered § 1681c when it amended the FCRA in the Consumer Reporting Employment Clarification Act of 1998, Pub. L. No. 105-347, 112 Stat. 3208, 3211. As amended, the relevant portions of the statute provide:

> [N]o consumer reporting agency may make any consumer report containing any of the following items of information:

> . . .

(2) Civil suits, civil judgments, and records of arrest that, *from date of entry, antedate the report by more than seven years* or until the governing statute of limitations has expired, whichever is the longer period.

. . .

(5) *Any other adverse item of information, other than records of convictions of crimes which antedates the report by more than seven years.*

15 U.S.C. § 1681c(a) (2010) (emphasis added).**[6]** The statute no longer separately lists indictment records, and instead relegates them to § 1681c(a)(5)'s "adverse item" catchall category. Records of arrest moved to a different section, (a)(2), and the statute no longer imposes reporting restrictions for criminal convictions. Notably, the amendment also removed any reference to "date of disposition" in § 1681c(a). Instead, the statute now names "date of entry" as the triggering date for civil suits, civil

---

**[6]** We note that there is a simple scrivener's error in § 1681c(a)(5). A comma should be included to separate the exclusionary clause as follows, "Any other adverse item of information, other than records of convictions of crimes[,] which antedates the report by more than seven years." The statute's plain meaning and structure intended to restrict reporting of adverse information with the exception of convictions. *See also* FTC Staff Report, *40 Years of Experience with the Fair Credit Reporting Act* at 57 (July 2011), (2011 Report) ("A CRA is not permitted to report criminal records other than convictions beyond seven years . . . ."), https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf.

judgments, and records of arrest, and remains silent about "adverse items."

## B.  FCRA's seven-year window

Which date triggers the reporting window under § 1681c(a) is a matter of statutory interpretation, and we begin with the plain language of the statute.  *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.").  If the language is ambiguous, we look to "canons of construction, legislative history, and the statute's overall purpose to illuminate Congress's intent."  *Jonah R. v. Carmona*, 446 F.3d 1000, 1005 (9th Cir. 2006).

As stated above, § 1681c(a)(5) prohibits reporting "[a]ny other adverse item of information . . . which antedates the report by more than seven years."  15 U.S.C. § 1681c(a)(5).  The parties agree that a criminal charge is an adverse event—its disclosure could have an unfavorable bearing on a consumer's ability to lease housing.  While § 1681c(a)(5) does not specifically state the date that triggers the reporting window, the plain language of the statute suggests that for a criminal charge, the date of entry begins the seven-year window.  The statute's use of "antedates" connects the seven-year window directly to the adverse event itself.  A charge is an adverse event upon entry so it follows that the date of entry begins the reporting window.

We find further support of this construction in the FTC's interpretation of the statute.  In 2011, the FTC issued a new staff report rescinding the 1990 Commentary.  The 2011 Report includes a new comment for § 1681c(a)(5) that governs adverse information: "[t]he seven year reporting

period for criminal record information 'other than convictions of crimes' runs from the date of the reported event." 2011 Report at 57. A criminal charge is indisputably criminal record information. This comment explains that the date of the reported event, here, the date the criminal charge is entered, triggers the seven-year window.

TSP counters that the dismissal of a charge is also an adverse event and that it would be nonsensical to bar CRAs from reporting criminal charge information seven years after the date of entry, but to allow reporting dismissal information if it came within seven years from the date of disposition. We disagree, and find that the dismissal of a charge is not per se an adverse item. A dismissal indicates that the consumer no longer faces an indictment, an overall positive—but at least neutral—development. A dismissal is only adverse insofar as it discloses the previous adverse event, i.e., the charge. Even though non-adverse information is typically not subject to reporting windows, a dismissal is different. A dismissal necessarily references the existence of the adverse event, to which the reporting window still applies. *See* 2011 Report at 55 ("Even if no specific adverse item is reported, a [CRA] may not furnish a consumer report referencing the existence of adverse information that predates the times set forth in [§ 1681c(a)]."). Both events must be considered as part of the same criminal record and neither may be reported after seven years from the "adverse item," the charge. Reporting the dismissal alone would reveal the existence of the charge, which after seven years, constitutes outdated criminal history information. A related later event should not trigger or reopen the window, as the adverse event already occurred. To hold otherwise, thereby allowing this information to be reported through disclosure of a dismissal, would circumvent Congress's intent to

confine adverse criminal information to a seven-year window.**[7]**

The FCRA's legislative history, with a focus on the 1998 amendment, also supports our reading of § 1681c(a)'s text. The "date of disposition" language no longer remains in the relevant section of the statute. Congress's removal of "date of disposition" altogether suggests an intent to keep records current by starting reporting windows sooner. However, Congress used a "date of entry" for civil suits, civil judgments, and records of arrest, but failed to do so for adverse items. "[W]here Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (alteration in original) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). While this maxim generally guides our statutory analysis, we find it inappropriate to do so here.

Courts must presume that Congress intends statutory changes "to have real and substantial effect," *Stone v. INS*, 514 U.S. 386, 397 (1995). If we were to find the failure to specify "date of entry" in § 1681c(a)(5) as indicative of a

---

**[7]** We recognize that some lower court decisions reached the same result under different reasoning. In *Haley v. TalentWise, Inc.*, 9 F. Supp. 3d 1188, 1192 (W.D. Wash. 2014), the district court held that a dismissed charge is an "adverse item," as its disclosure may bear unfavorably on the consumer. *Id.* While we clarify today that a dismissal is not a separate adverse item—the charge is the adverse item, which the dismissal necessarily discloses—the dismissal in *Haley* was still improperly included because the charge was entered over seven years before the report. *See also Dunford v. Am. DataBank, LLC*, 64 F. Supp. 3d 1378, 1392–93 (N.D. Cal. 2014) (similarly finding that a dismissed charge is an adverse item and was improperly included in a consumer report).

"date of disposition" trigger date, this would effectuate no change for an indictment record despite a significantly altered statute.  Instead, we heed the Court's admonition that "[n]ot every silence is pregnant," and Congress's silence may merely reflect its belief that the plain language suffices. *Burns v. United States*, 501 U.S. 129, 136 (1991) (alteration in original) (quoting *State of Illinois Dep't. of Pub. Aid v. Schweiker*, 707 F.2d 273, 277 (7th Cir. 1983)), *abrogated on other grounds by United States v. Booker*, 543 U.S. 220 (2005).  The plain language of "adverse item" suggests that Congress intended the trigger date to begin on the date the adverse event occurred or the date of entry.

The only statutory support for the dissent's claim that Congress intended to broaden the reporting windows is that convictions may be reported indefinitely following the 1998 amendment.   While technically true, the amendment simultaneously limited the reporting windows for civil suits, civil judgments, and records of arrest, and removed the date of disposition language for adverse items, all of which strongly suggests a Congressional intention to narrow reporting windows.  The unique nature of convictions further undermines the dissent's argument.  A conviction indicates that the government met its burden to prove beyond a reasonable doubt that the consumer committed a crime.  In contrast, records of arrest or criminal charges do not prove that the consumer engaged in criminal activity. As a result, when one considers such records in the context of the FCRA, she cannot properly impute the same Congressional intent to reports not involving criminal convictions.

TSP argues that the date of disposition remains valid because the 2011 Report indicates that the 1990 Commentary is only "partially obsolete."  2011 Report at 7. The 2011 Report specifically states that it "incorporates

material from the following sources: Interpretations from the 1990 Commentary on sections of the FCRA that have not been amended, which staff continues to believe are timely, accurate, and helpful." *Id.* It also notes, "Even though the 1990 comments listed in the endnotes are not precisely duplicated in the 2011 [Report], staff believes the references will assist readers where a 1990 comment is a source for an interpretation here." *Id.* at 16 n.60. TSP argues that because the 2011 Report folds in much of the 1990 Commentary, the date of disposition should remain the triggering date. The district court agreed with TSP and placed heavy reliance on endnote 194 following the 2011 Report's comment that "[t]he seven year reporting period for criminal record information . . . runs from the date of the reported event." *Id.* at 57. The endnote cites "1990 comment 605(a)(5)-2," which states: "[t]he seven year reporting period runs from the date of disposition, release or parole, as applicable. For example, if charges are dismissed at or before trial, or the consumer is acquitted, the date of such dismissal or acquittal is the date of disposition." 16 C.F.R. app. pt. 600 cmt. 605(a)(5)(2) (2010). We disagree with TSP's and the district court's reliance on the 1990 Commentary.

It is counterintuitive to place authoritative weight on rescinded commentary over the plain language of both the statute and the 2011 Report. The 2011 Report relies on interpretations from the 1990 Commentary only "on sections of the FCRA *that have not been amended*" and in 1998, Congress amended this section. 2011 Report at 7 (emphasis added). The 1998 amendment of the FCRA specifically removed the "date of disposition" language. Furthermore, the 2011 Report comment states that the trigger date is "the date of the reported event" or the date of the entry. The statute and the 2011 Report support our conclusion that the date of entry triggers the reporting window. An endnote

citation to a directly conflicting provision in the rescinded 1990 Commentary does not compel a different outcome.

It is informative that the Consumer Financial Protection Bureau (CFPB) and the FTC agree that the date of entry should be the triggering date. *See* Brief for CFPB & FTC as Amici Curiae Supporting Appellant, 11. They stipulate that "[t]o the extent there is any ambiguity, the [FTC] now clarifies that the [2011 Report] referred to 1990 Comment 605(a)(5)-2 merely to flag the previous interpretation for an interested reader, not to suggest that Comment 605(a)(5)-2 articulated the governing standard notwithstanding the change in the statute." *Id.* at 22. This explanation, while not binding, provides context for the endnote primarily relied upon by the district court.

Lastly, the purpose of the FCRA warrants an interpretation that favors the consumer. *Guimond*, 45 F.3d at 1333 ("[The statute's] consumer oriented objectives support a liberal construction of the FCRA."). The FCRA aims to protect consumer information by limiting reporting periods for certain types of information to ensure only current and relevant information is disclosed. For a criminal charge, starting the permissible seven-year reporting period at the date of entry is congruent with the objectives of the FCRA.

For the cited reasons, we hold that the seven-year reporting window for a criminal charge begins on the date of entry. We additionally hold that the dismissal of a charge does not constitute an independent adverse item and may not be reported after the reporting window for the charge has ended. The date of a dismissal is merely the "date of disposition" of an indictment, which Congress specifically eliminated from the FCRA's list of events triggering the seven-year reporting window.

## CONCLUSION

The district court erred by concluding that the ICRAA is unconstitutionally vague as applied to tenant screening applications. We are bound by the California Supreme Court's holding in *Connor* that the ICRAA overlaps with the CCRAA, which forecloses TSP's argument that the statutory scheme is unconstitutionally vague. Accordingly, we reverse and remand to the district court to consider the merits of Moran's ICRAA claims. We further remand to the district court to analyze whether Moran stated a claim pursuant to the UCL predicated on TSP's alleged violations of the ICRAA. Finally, we hold that the FCRA permits consumer reporting of a criminal charge for only seven years following the date of entry of the charge. The Report's inclusion of the 2000 Charge fell outside of the permissible seven-year window, and thus, Moran sufficiently stated claims pursuant to the FCRA.

Accordingly, we REVERSE the district court and REMAND for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

---

KLEINFELD, Senior Circuit Judge, concurring in part and dissenting in part:

I join in Parts I and II of the analysis. I respectfully dissent from Part III. We should affirm the district court's judgment regarding the Fair Credit Reporting Act.

Moran alleges in his complaint that he applied for housing at Maple Square, and was rejected because of his

credit report. The credit report disclosed a substantial criminal history, including a conviction for embezzlement and theft from an older or dependent adult, and charges of forgery, burglary, and for being "under the influence of a controlled substance." The conviction and charges of the more serious crimes were all reportable, and the credit report's disclosures of them are not at issue (as to the federal claim). The crime report that is at issue is the March 2004 dismissal of a charge for being "under the influence of a controlled substance," filed in May of 2000. The filing date for the charge was more than seven years before the credit report, but the dismissal four years later was within the seven-year limit. The majority opinion holds that the credit reporting agency violated the federal statute by reporting that dismissal, despite its being within the seven-year window, because its disclosure would necessarily imply the existence of the charge, filed four years earlier. The words of the statute, though, plainly make the dismissal reportable. Moran is not entitled to keep it secret from prospective landlords, employers, and creditors just because it stemmed from a criminal charge four years earlier.

## I. THE WORDS OF THE STATUTE

As the majority concedes, we are required to start our analysis with the language of the statute. The statute says that no consumer reporting agency may make a consumer report containing various items of information, including bankruptcies more than ten years old, civil suits and judgments and records of arrest more than seven years old, tax liens and accounts placed for collection more than seven years old, and "any other adverse item of information, other than records of convictions[,]" more than seven years old. Here is the exact language bearing on criminal cases:

> (2)  Civil suits, civil judgments, and records of arrest that, from date of entry, antedate the report by more than seven years . . . .

> (5)  Any other adverse item of information, other than records of convictions of crimes[,] which antedates the report by more than seven years.[1]

The only judicial determinations needed are whether a dismissal of a criminal charge falls within the statutory category, "any other adverse item of information other than records of convictions of crimes," and whether the record of dismissal "antedates the report by more than seven years." The dismissal in this case is an adverse item of information, because it reveals prior contact with the criminal justice system, and did not antedate the report by more than seven years, so it was permissibly reported.

That should be the end of the matter.  Today's majority, though, takes a path without support in the text of the statute, and without support from any of our sister circuits, mistakenly holding that even if a dismissal is an adverse item of information within seven years, it may not be reported if it arises from a charge more than seven years old.  The closest statutory categories are records of arrest, that cannot be reported more than seven years later, and records of convictions, that can be reported forever.  A dismissal is neither one.

## II. THE NATURE OF DISMISSALS

Readers unfamiliar with the details of the criminal process, especially at the misdemeanor level, may be

---

[1] 15 U.S.C. § 1681c(a) (2010).

surprised that the possession charge was not dismissed until almost four years after it was filed.  An explication of how dismissals come about may be helpful.

Perhaps the most common use of a dismissal is to relieve an individual of some collateral consequences of conviction after successful completion of probation, jail time, or both. Such a dismissal means that the defendant behaved himself after sentencing, and not that he was found innocent or "cleared."  In many localities, the criminal bar's shorthand for this is "SIS," meaning "suspended imposition of sentence," often obtained in exchange for a guilty plea.  For example, in California, the Penal Code provides that the court "in the order granting probation, may suspend the imposing or the execution of the sentence" subject to satisfaction of conditions it may set.[2]  As a condition of probation, the court "may imprison the defendant in a county jail" up to the maximum for the crime.[3]  If the defendant has done his time and fulfilled the other conditions of probation, the court may allow him to withdraw his guilty plea.  The court must then dismiss the charge, releasing the defendant from many but not all the penalties and disabilities resulting from the offense of conviction.[4]  "A dismissal under [California Penal Code] section 1203.4 . . . is in no way equivalent to a finding of factual innocence.  Section 1203.4 simply authorizes a court to grant relief to individuals who

---

[2] Cal. Penal Code § 1203.1(a) (2012).

[3] *Id.*

[4] *Id.* § 1203.4(a)(1).

successfully complete the terms of probation by mitigating some of the consequences of conviction."[5]

There is nothing obscure about "SIS" followed by probation, sometimes jail, and then dismissal. It is typical of California's sentencing scheme as well as those of other states.[6] And it is the routine object of defense counsel "pleading out" a client's misdemeanor. Bargaining with the assistant district attorney often turns on whether the defendant will get a suspended sentence, where the conviction will stand, or suspended imposition of sentence, where the charge will be dismissed following compliance over a period of time after the guilty plea with various conditions.

Dismissals also occur where assistant district attorneys and police officers fail to show up in court at the scheduled times for trial. This almost never happens in well disciplined jurisdictions, but occurs with some frequency in poorly disciplined locales. Where there is no prosecutor to prosecute, and no police officer to provide testimony (many misdemeanors, such as speeding and reckless driving, do not need other witnesses), the defendant and defense counsel can sit on their hands, while the judge, for lack of anyone to prosecute and prove the case, dismisses it.

---

[5] *Baranchik v. Fizulich*, 217 Cal. Rptr. 3d 423, 435 (Cal. Ct. App. 2017), *review denied* (July 12, 2017).

[6] *See* Alaska Stat. § 12.55.085; Ariz. Rev. Stat. Ann. § 13-907; Haw. Rev. Stat.§§ 712-1255, 712-1256, 853-1, 853-4; Idaho Code Ann. §§ 19-2601. 19-2604(1), (2); Mont. Code Ann. §§ 46-18-201, 46-18-204; Nev. Rev. Stat. Ann. §§ 458.300, 458.330; Or. Rev. Stat. § 137.225; Wash. Rev. Code §§ 3.66.067, 9.95.200.

Another less common but more serious dismissal comes when the prosecution is missing a critical witness. In a gang shooting case, for example, the prosecutor may lack a witness to establish that the defendant, as opposed to another gang member, was the shooter. The prosecutor may then be compelled to dismiss the case before a jury is empaneled (to avoid a double jeopardy bar). In the most serious cases, charges may be dismissed because the witnesses are scared to testify, or are dead. In these cases, the government is free to bring charges again if witnesses can be found, because such dismissals are usually without prejudice.

Yet another frequent cause of dismissal occurs when a defendant is convicted of crimes generating enough jail or prison time so that the prosecutor sees no need to prove more. When a defendant pleads guilty to a crime and agrees to a sentence deemed adequate, the prosecutor will ordinarily dismiss other, less serious charges. Often a defendant pleads guilty to one or more counts of an indictment and the other guilty counts are dismissed. The prosecutor dismisses the lesser charges because they would likely lead to in-custody time concurrent with and less than the prison time already assured. Far from "clearing" the defendant, the dismissal means that the defendant pleaded guilty to other crimes generating an adequate sentence. Plea agreements in federal court also frequently stipulate to a sentence increased by the dismissed charges as "relevant conduct," so that the defendant can be punished for them without the need for the prosecutor to prove them beyond a reasonable doubt.**[7]**

---

**[7]** *See also United States v. Watts*, 519 U.S. 148, 157 (1997) ("[A] jury's verdict of acquittal does not prevent the sentencing court from

Occasionally, but not often, a dismissal is evidence of innocence.  In every criminal defense lawyer's career there comes a time, or perhaps a few times, when a prosecutor is persuaded that the person charged did not commit the crime and did not commit some lesser crime to which the charge might be reduced.  After such a dismissal, the defense lawyer's office likely will be disrupted by loud shouts of joy on this rare and wonderful occasion.  But this does not happen very often.

Though the occasional dismissal does mean that the prosecutor was indeed satisfied that the person accused was innocent, most follow an adjudication of guilt.  Quite a few, such as the ones that follow a suspended imposition of sentence or various kinds of probation, are more like convictions.**[8]**  They typically establish that the defendant pleaded guilty or was convicted at trial, and then satisfied post-conviction conditions.

Do dismissals then fall within the statutory category of "any other adverse item of information"?  As the above explanation shows, dismissals are by their nature not the same as arrests, charges, or convictions.  Arrests and charges amount to mere accusations subject to a presumption of

---

considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence.").

**[8]** *See also Aldaco v. RentGrow, Inc.*, 921 F.3d 685 (7th Cir. 2019) (holding record of guilty plea and sentence for battery was a "conviction" for purposes of the Fair Credit Reporting Act despite subsequent dismissal of the charge).

innocence,[9] but dismissals are typically more like convictions, and follow guilty pleas.

The majority makes the puzzling statement that "a dismissal is merely the 'date of disposition' of an indictment" to bolster its argument for treating a dismissal as something other than an adverse item of information. This is wrong, at a minor level, because the vast majority of dismissals are of misdemeanors, not felonies, so there is no indictment. It is wrong at a major level because a dismissal independently establishes something very important to prospective employers, landlords, and creditors: that the applicant got himself entangled with the criminal justice system. This information is "adverse" all by itself. "As defined by the [Federal Trade] Commission[,] adverse information means[] information which may have, or may reasonably be expected to have, an unfavorable bearing on a consumer's eligibility or qualifications for . . . benefit[s]."[10] The only way to read "any other adverse item of information" is to mean "any" item of information that is "adverse." The statute balances the interests of employers, landlords, and creditors with those of applicants for jobs, leaseholds, and loans, by allowing for the reporting of such information, subject to a seven-year limit in the absence of what amounts for federal purposes to a conviction.

---

**9** *See Manual of Model Criminal Jury Instructions for the Ninth Circuit*, § 1.2 The Charge—Presumption of Innocence (2010) (explaining an indictment "simply describes the charge[s]" and "is not evidence and does not prove anything").

**10** *Equifax Inc. v. FTC.*, 678 F.2d 1047, 1050 (11th Cir. 1982) (citation omitted).

The Seventh Circuit, it should be noted, recently considered a somewhat analogous challenge to treating dismissals as "adverse" information, and set up a circuit conflict with the majority's decision. In *Aldaco v. RentGrow Inc.*,[11] the apartment-seeker had pleaded guilty to a misdemeanor and received a "diversionary disposition" under Illinois law, and the charge was dismissed after compliance with conditions, all long before the seven-year window. Our sister circuit held that regardless of what state law might provide, the plea was a "conviction" for federal-law purposes, including the Fair Credit Reporting Act. That rationale probably applies to the case before us as well. Though the current state of the briefing and record do not establish it clearly, *Aldaco* describes the most common sort of dismissal. My more limited approach, treating the dismissal as independently "adverse" information, would subject dismissals to the seven-year reporting limit, while the Seventh Circuit approach makes dismissals resulting from guilty pleas reportable forever. I do not intimate disagreement with the Seventh Circuit analysis, since both theirs and mine may both be correct.

Though the majority purports to respect the words of the statute, there is no statutory support whatsoever for the majority's notion that because a dismissal results from an earlier charge, the seven-year limit should run from the date of the earlier charge. The statute says "any other adverse item of information." It has no words implying a limitation to adverse items of information with no underlying history, and the word "any" makes that inference a flat contradiction of the statute.

---

[11] *Aldaco v. RentGrow Inc.*, 921 F.3d 685 (7th Cir. 2019).

Moran's 2004 dismissal, almost four years after the charge, suggests that Moran, in all likelihood, behaved himself and conformed to the conditions of release for four years after a guilty plea.[12]  Because the dismissal puts Moran in a bad light, by revealing entanglement with the criminal law system, it was adverse, so reportable within the seven-year window.

## III. LEGISLATIVE HISTORY

We have significant legislative history in this case, that is, changes adopted by Congress, as opposed to this or that individual Congressman or staff person expressing a view. The 1970 version of the statute had the same language that the now applicable 1998 version has about "any other adverse item of information . . . which antedates the report by more than seven years."[13]  But there were two major changes.  In the ellipsis above for adverse items of information, the 1998 version of the statute introduced an exception for convictions.  It was amended to say "any other adverse item of information, *other than records of convictions of crimes*[,] which antedates the report by more than seven years."[14]  The statute used to prohibit reports of "convictions of crime which, from date of disposition, release or parole, antedate the report by more than seven

---

[12] Moran argued below that this the dismissal at issue did not fall under California Penal Code § 1203.4.

[13] The "catchall" provision has been maintained in later iterations of the statute.

[14] 15 U.S.C. § 1681c(a)(5) (1998) (emphasis added).

years."[15]   Thus, Congress used to require old convictions to be omitted from reports after seven years.  Now they are reportable forever.  The other change is that the old version of the statute said that records of arrest or indictment, not just convictions, "which from the date of disposition, release or parole, antedate the report by more than seven years," are not reportable.  The statute still says that stale records of arrest, those antedating the report by more than seven years, are unreportable.[16]   But it no longer separately addresses indictments.  As with dismissals, indictments either fall within the category of "any other adverse item of information," which become unreportable after seven years, or they are not adverse items of information, in which case they can be reported forever.

These changes open up reporting of convictions from seven years, to forever.  For old arrests, and "any" other adverse items of information, including indictments, the seven-year window applies.  Nothing in the statute starts the seven-year window, for arrests, indictments, or any other adverse information, at any earlier time than the item of information itself.  They all, of course, would not exist but for the earlier crime or suspicion of crime.

The majority opinion somehow infers from these statutory changes that Congress sought to protect people more than it had before from having their criminal history reported.  That is an illogical inference.  Convictions used to

---

[15] 15 U.S.C. § 1681c(a)(6) (1970).

[16] That the seven-year limit for records of arrest now runs from "date of entry" as opposed to "date of disposition" does not support the majority's view that Congress intended to narrow reporting.  For records of arrest, the "date of entry" and "date of disposition" are one and the same—the date the arrest was entered into police records.

become stale in seven years, but now they stay alive forever. That expands allowable reporting rather than limiting it. As the majority concedes, indictments are also indeed adverse information, so that even though the new version of the statute does not mention them, they still become unreportable after seven years as "any other adverse item of information." One adverse item of information, convictions, are no longer shielded by the seven-year limit, and the rest stay the same. The change was in the opposite direction, exempting convictions from the seven-year reporting limit.

The change shows that Congress concluded that lenders, landlords, and employers needed to know more about convictions. Those who find legislative history helpful should look to the remark in the Congressional Record that the legislation exempted convictions from the seven-year reporting limit because "this information may be of critical value to prospective employers, especially in the areas of child or elderly care, school bus driving and household services."[17] Although the legislative history says that "[t]he primary issue addressed by the bill relates to problems encountered by a limited number of firms that provide employment screening for national trucking companies,"[18] this Congressional liberalization applies equally to rental determinations.

## IV. ADMINISTRATIVE INTERPRETATION

In their amicus brief, the Consumer Financial Protection Bureau (the "Bureau") and the Federal Trade Commission (the "Commission") urge us to overturn their previous

---

[17] 144 Cong. Rec. H10218-02, 1998 WL 716421 (Oct. 8, 1998).

[18] *Id.*

interpretation of the statute. The majority opinion accepts their invitation, not even mentioning that credit reporting agencies, lenders, landlords, and employers have long relied on the established Commission practice.

As we have explained, neither the new nor old version of the statute speaks expressly to dismissals. The older version, set out verbatim above in the majority opinion, had two subsections bearing on staleness of criminal matters for purposes of credit reporting. Subsection 5 made records of "arrest, indictment, or conviction of a crime" stale seven years from disposition, release, or parole. Subsection 6 made "any other adverse item of information" stale in seven years. The new version, set out verbatim above, eliminates Subsection 5, addressing records of "arrest, indictment, or conviction."[19] The "any other adverse item of information" subsection is identical to the previous version of the statute, except that it makes an exception for records of convictions. They are never stale and may be reported forever.

In 1990, the Commission issued commentary, though no regulations, interpreting the old version. They are found in the appendix to Part 600 of the Code of Federal Regulations. The commentary says expressly what is implied by the statute, that "the act imposes no time restriction on reporting of information that is not adverse."[20] That means that if dismissals are not adverse items of information, they can be reported forever. The commentary assumes, though, that dismissals are indeed adverse, stating that charges become

---

[19] Only records of arrest were expressly maintained in another subsection.

[20] Federal Trade Commission, *Statements of General Policy or Interpretation: Commentary on the Fair Credit Reporting Act*, 55 Fed. Reg. 18,804-01 (May 4, 1990).

stale and unreportable seven years from the dismissals, rather than, as the majority would have it, seven years from the entry of charges.  "The seven-year reporting period runs from the date of disposition, release, or parole, as applicable. For example, if charges are dismissed at or before trial, or the consumer is acquitted, the date of such dismissal or acquittal is the date of disposition."[21]  Because the seven-year limit for charges are expressly tied to their "dispositions," dismissals must also be considered "adverse" for any reporting limit to be effective.  It is also worth noting that the commentary sensibly assumes that even an acquittal is an adverse item of information.  Both an acquittal and a dismissal evidence a contact with the criminal justice system, so recipients of credit reports may regard them as adverse.

In 2011, as interpretative authority was being handed over from the Commission to the newly created Bureau, the Commission issued a "staff report."[22]  Though noting the partial obsolescence of the 1990 commentary because of the passage of time and adoption of various amendments, the Commission thought its "compendium of interpretations . . . w[ould] be of use to the [Bureau] staff, [and] the businesses subject to the Commission's jurisdiction" under the statute. As for interpretations of unamended sections, like the staleness of "any other adverse item of information," the report incorporated interpretations from the 1990

---

[21] *Id.*

[22] Federal Trade Commission, *40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations* (July 2011).

commentary that the "staff continue[d] to believe [we]re timely, accurate, and helpful."[23]

The 2011 staff report, which like the previous guidance, did not have the force of regulations, made no change regarding when a dismissal becomes stale, and was clear that "the seven-year reporting period applies only to adverse information that casts the consumer in a negative or unfavorable light."[24]    That the report may not have incorporated the old "disposition" time period comment from the 1990 commentary makes no difference in the reporting of dismissals.  For criminal record information other than convictions of crimes, the report says that the seven years "runs from the date of the reported event"—that is, for dismissals, the date the dismissal was filed.

There has been no new regulation, commentary, guidance memorandum, or published interpretation of any kind opining on the reporting of dismissals.  Thus, there is nothing for the majority to defer to except the new litigation position taken by the Bureau, which argues in its brief that a dismissal becomes stale seven years from the charge.  And it is unclear how the Bureau's new position should be applied, since there are typically multiple charges over a period of months or even years in a criminal case.  After the filing of an initial criminal complaint, there may be an amended complaint, an indictment or information, and frequently an amended indictment.  Which charge would start the seven years?

---

[23] *Id.* at 7.

[24] *Id.* at 55.

Nor, of course, does the Bureau's brief have the force of law as a regulation would, or even the utility to the commercial world and consumers of published guidance. No *Chevron* deference applies to "a convenient litigation position" taken in a brief.[25]  In our en banc decision in *Price v. Stevedoring Services of America*, we held that our previous rule requiring *Chevron* deference to reasonable litigating positions of the Director of the Office of Workers' Compensation Program in interpreting the Longshore and Harbor Workers' Compensation Act could not be reconciled with Supreme Court precedent.[26]  Distinguishing between an agency's litigating position as to its governing statute as opposed to that of its own regulations,[27] we held that the Director's "litigating position . . . does not merit *Chevron* deference" in the interpretation of the Longshore Act in the absence of, *inter alia*, formal regulations and Congressional intent to imbue litigating positions the force of law.[28]  Nor does a litigating position even merit *Skidmore* deference where it is not persuasive.[29]  In the case before us, there is no ambiguity in the statute that even opens the door to

---

[25] *See Presidio Historical Ass'n v. Presidio Tr.*, 811 F.3d 1154, 1166 (9th Cir. 2016); *Indep. Training & Apprenticeship Program v. California Dep't of Indus. Relations*, 730 F.3d 1024, 1034 (9th Cir. 2013).

[26] 697 F.3d 820, 826 (9th Cir. 2012) (en banc).

[27] *Id.* at 828.

[28] *Id.* at 827–31.

[29] *Id.* at 832; *see also Presidio*, 811 F.3d at 1166 n.7 ("Our approach to *Skidmore* deference vis-a-vis an agency's litigating position has varied depending on the factual circumstances.").

deference.**30**  There is nothing but a litigating position.  And the Bureau's litigating position is unpersuasive because of its lack of support in the text of the statute and its disregard of reliance on the Commission's long established position to the contrary.

We owe some deference to long established commercial norms, in the absence of any change of applicable laws or regulations.  As one of the amici points out, "the [statute] has been interpreted for decades to permit [credit reporting agencies] to report the dismissal of an indictment when the dismissal occurred within seven years of the report."**31**  In the absence of new law or regulation to the contrary, we should not defer at all to the Bureau's litigating position that unfairly subjects issuers of credit reports to statutory damages and attorney's fees awards for doing what has been done with approval of federal regulatory authorities for decades.  It is unfair in the extreme to enable a regulatory agency to overturn decades of reliance on an established procedure in amicus briefs that no one outside the agency can comment on before they are issued, and that in all likelihood will be undiscovered by anyone outside the litigation.  "A longstanding administrative interpretation upon which private actors have relied aids in construction of

---

**30** Because there is no regulation in this case, there is also no agency interpretation of its own regulation that may be entitled to *Auer* deference.  *See Auer v. Robbins*, 519 U.S. 452, 461 (1997).

**31** Brief of National Multifamily Resident Information Council as Amici Curiae Supporting Affirmance, 3.

a statute precisely because private parties have long relied upon it."**[32]**

There is also no statutory support or logical consistency to prohibiting reporting of dismissals but allowing reporting of other adverse information, where the other adverse information also stems from the same occurrence. Everything has a history. All later developments in a criminal case, not just dismissals, necessarily imply the existence of preceding developments. An indictment, for example, usually implies an earlier arrest. A conviction usually implies a record of arrest and of a charge. The only adverse item of information that does not imply an earlier incident in the criminal process is the commission of the crime, if there was one. Similarly, in the civil context, if someone signs a note and a 30-year mortgage in 2005 but quits making monthly payments in year 10, it should be obvious enough that a credit report in 2015 would properly disclose the default. Yet under the majority's logic (not Congress's), the default should be unreportable because it necessarily implies the existence of the note and mortgage which were signed more than seven years earlier. The statute plainly allows for reporting of "any" adverse item of information, with no exception for adverse items that would not exist but for some earlier event.

The practical consequences of the majority's view illuminate why Congress did not go the majority's way. As explained earlier, the 1998 amendments were designed, in

---

**[32]** *Alaska Stock, LLC v. Houghton Mifflin Harcourt Pub. Co.*, 747 F.3d 673, 686 (9th Cir. 2014) (citing 2B Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutes and Statutory Construction* § 49:3 (7th ed. 2012)).

part, to provide more "information [that] may be of critical value to prospective employers, especially in the areas of child or elderly care, school bus driving and household services."[33]  These concerns about public safety led to the exception from the seven-year bar for convictions.  Though convictions are reportable forever, dismissals are by themselves, even without reference to the charges, sufficient to put on notice a prospective landlord, employer, or creditor of a person's involvement with the criminal justice system.  If a charge of some sort of sex crime were dismissed pursuant to a plea bargain, a couple of years after the charges were filed (a common enough occurrence), a daycare facility might still want to be careful about employing the individual on account of the dangers sex criminals might pose to the children in its care.  Likewise, a landlord, exercising reasonable care to protect its tenants from harm, would want to know about dismissals of drug charges of a prospective renter.

**CONCLUSION**

Credit reports protect fellow employees, and tenants in the same apartment house as well as solvency of lenders.  In this case, a landlord ordered the credit report.  A landlord gets a credit report not only to gain assurance that the rent will be paid, but also to protect other tenants and the real estate itself from harm.  Some of us have been acquainted with people who were killed, or had to flee from their apartments, because bullets were flying through the walls or floors on account of criminals in other apartments.  And some of us have been acquainted with landlords whose property was ruined by the lingering smell of a methamphetamine lab.  In *Dunford v. American Databank*,

---

[33] 144 Cong. Rec. H10218-02, 1998 WL 716421 (Oct. 8, 1998).

the adverse material included multiple convictions and dismissals of numerous charges that made the plaintiff undesirable to the academic nursing program to which she sought admission, no doubt because of the risk of harm or death she might have posed to patients.**34**  Many criminals are dangerous, in one way or another, and dismissals of charges on one or another occasion do not establish that they did not commit the crimes.

The district court got it right, as have several other district courts.**35**  We should affirm.

---

**34** 64 F. Supp. 3d 1378, 1381–82 (N.D. Cal. 2014).

**35** *See, e.g.*, *Dunford*, 64 F. Supp. 3d at 1394; *Haley v. TalentWise, Inc.*, 9 F. Supp. 3d 1188, 1192 (W.D. Wash. 2014); *Tom Chen v. Vertical Screen, Inc.*, No. C17-0938, 2017 WL 3704836, at *3 (W.D. Wash. Aug. 28, 2017); *see also Landry v. Time Warner Cable, Inc.*, No. 16-CV-507, 2017 WL 3444825, at *2 (D.N.H. Aug. 9, 2017).