**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

TRACIE ANN GRIJALVA,
individually and on behalf of persons
similarly situated,

　　　　　*Plaintiff - Appellant*,

　v.

ADP SCREENING AND
SELECTION SERVICES
INCORPORATED, a Colorado
corporation,

　　　　　*Defendant - Appellee*.

No. 24-2984

D.C. No.
4:22-cv-00206-
JCH

OPINION

Appeal from the United States District Court
for the District of Arizona
John Charles Hinderaker, District Judge, Presiding

Argued and Submitted March 21, 2025
Phoenix, Arizona

Filed August 15, 2025

Before: Richard R. Clifton, Jay S. Bybee, and Bridget S.
Bade, Circuit Judges.

Opinion by Judge Bridget S. Bade;
Concurrence by Judge Richard R. Clifton

# SUMMARY[*]

## Fair Credit Reporting Act

The panel affirmed the district court's grant of summary judgment in favor of ADP Screening and Selection Services, Inc., on a claim brought under the Fair Credit Reporting Act by Tracie Ann Grijalva.

Grijalva alleged that ADP violated 15 U.S.C. § 1681c(a)(5) by disclosing, as part of a background check, that she was excluded from participating in federally funded health care programs under 42 U.S.C. § 1320a-7 and that the reason for her exclusion was that her nursing license was revoked in 2011.

Disagreeing with the district court, the panel held that ADP violated the FCRA. Because Grijalva's exclusion from federal health care programs was ongoing, ADP did not violate § 1681c(a)(5), which prohibits the reporting of adverse information that antedates a consumer report by more than seven years, by reporting the exclusion. The reporting of the revocation of Grijalva's license over seven years earlier, however, did violate § 1681c(a)(5).

The panel nonetheless affirmed the district court's decision because, as a matter of law, ADP's interpretation of

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the FCRA was not objectively unreasonable, and ADP therefore did not violate the FCRA either negligently or willfully.

Concurring in part and concurring in the judgment, Judge Clifton agreed with the majority that ADP did not violate § 1681c(a)(5) by disclosing the fact of Grijalva's exclusion from federal health care programs. He also agreed that ADP did not act negligently or willfully. Judge Clifton disagreed, however, with the majority's conclusion that ADP violated the FCRA by reporting the reason for Grijalva's exclusion, that her nursing license had been revoked.

## COUNSEL

Susan M. Rotkis (argued), Consumer Justice Law Firm PLC, Tucson, Arizona; Devin H. Fok, DHF Law PC, San Marino, California; for Plaintiff-Appellant.

Richard A. Millisor (argued) and James M. Patrick, Fisher & Phillips LLP, Cleveland, Ohio; Pavneet S. Uppal, Fisher & Phillips LLP, Phoenix, Arizona; for Defendant-Appellee.

**OPINION**

Bade, Circuit Judge:

Tracie Ann Grijalva appeals the district court's grant of summary judgment in favor of ADP Screening and Selection Services, Inc., on her Fair Credit Reporting Act (FCRA) claim. Grijalva sued ADP alleging that it violated the FCRA by disclosing, as part of a background check, that (1) she is excluded from participating in federally funded health care programs under 42 U.S.C. § 1320a-7, and (2) the reason for her exclusion is that her nursing license was revoked in 2011. She alleged that ADP's disclosure of both pieces of information violated 15 U.S.C. § 1681c(a)(5), a catchall provision of the FCRA that prohibits a "consumer reporting agency" (CRA) from disclosing in a "consumer report . . . [a]ny . . . adverse item of information, other than records of convictions of crimes[,] which antedates the report by more than seven years." *See generally Moran v. Screening Pros, LLC* (*Moran I*), 943 F.3d 1175, 1182–83, 1183 n.6 (9th Cir. 2019) (discussing the statute's background and recognizing the absence of this inserted comma as "a simple scrivener's error"). The district court granted summary judgment for ADP, concluding that ADP did not violate the FCRA and alternatively, if it did, it did not do so negligently or willfully and therefore was not liable. We have jurisdiction under 28 U.S.C. § 1291. We conclude that ADP violated the FCRA, but we affirm the district court's decision because ADP did not do so negligently or willfully.

I.

A.

The U.S. Department of Health and Human Services' Office of Inspector General (HHS-OIG) can "exclude . . . individuals and entities from participation in any Federal health care program."  42 U.S.C. § 1320a-7; *see also Exclusion Authorities*, U.S. Dep't of Health and Hum. Servs., Off. of Inspector Gen., https://oig.hhs.gov/exclusions/authorities.asp [https://perma.cc/TV4X-7QAK].   Section 1320a-7 clearly states that HHS-OIG "shall" make certain mandatory exclusions and "may" make other permissive exclusions. *Compare* § 1320a-7(a) (mandatory exclusions), *with* § 1320a-7(b) (permissive exclusions).   As relevant here, HHS-OIG is permitted, but not required, to exclude a practitioner if her "license to provide health care has been revoked or suspended by any State licensing authority, . . . for reasons bearing on the individual's . . . professional competence, professional performance, or financial integrity."  § 1320a-7(b)(4)(A).

HHS-OIG maintains a List of Excluded Individuals/Entities (LEIE).   The General Services Administration maintains a similar list called the System for Award Management (SAM).   Both LEIE and SAM are publicly searchable. *Search the Exclusions Database*, U.S. Dep't of Health and Hum. Servs., Off. of Inspector Gen., HHS.gov, https://exclusions.oig.hhs.gov [https://perma.cc/ATU2-ZSKN]; *Search*, U.S. Gen. Servs. Admin., SAM.gov, https://sam.gov/search [https://perma.cc/R5FY-VLLA].

The Arizona State Board of Nursing revoked Grijalva's certified nursing assistant license in 2011 after she accepted

money from a client with dementia.  Subsequently, HHS-OIG notified Grijalva that, because of the revocation, she had been excluded from participating in federally funded health care programs.[1]  *See* § 1320a-7(b)(4)(A).  Grijalva's exclusion was recorded in both LEIE and SAM, and she remains on both lists to this day.  She represents that she has not applied for the reinstatement of her nursing license because she left the profession and does not intend to return.[2]

In 2020, Grijalva applied for a position with The Results Company (TRC) and was conditionally offered a job subject to a background check.  The proffered job involved health care consulting as a customer service representative.

Grijalva's background check was conducted by ADP, a CRA.  TRC requested that ADP perform a "Government Sanctions Registry" search, which included a search of LEIE and SAM.  ADP reported that Grijalva was listed as excluded on both LEIE and SAM.  ADP's report indicated

---

[1]  There is an "administrative process" for exclusion under § 1320a-7(b)(4), which begins with a written Notice of Intent to Exclude and allows for a written response "with any information or evidence relevant to whether the exclusion is warranted and to raise any other related issues, such as mitigating circumstances." *Exclusion FAQs*, U.S. Dep't of Health and Hum. Servs., Off. of Inspector Gen., HHS.gov, https://oig.hhs.gov/faqs/exclusions-faq [https://perma.cc/RG3U-82VT]. HHS-OIG "considers all available information in making a final decision about whether to impose the exclusion." *Id.*  Excluded individuals have appeal rights. *Id.*

[2] Although Grijalva's exclusion is indefinite in length, it is reversible. An individual indefinitely excluded under § 1320a-7(b)(4) "may apply for reinstatement when they have regained the license referenced in the exclusion notice." *Applying for Reinstatement*, U.S. Dep't of Health and Hum. Servs., Off. of Inspector Gen., https://oig.hhs.gov/exclusions/reinstatement.asp [https://perma.cc/PH9M-6T2F].

that Grijalva was listed as excluded on LEIE because her license was revoked or suspended.  It also included the Offence Code 1128B4, a reference to § 1128(b)(4) of the Social Security Act, codified at 42 U.S.C. § 1320a-7(b)(4), which describes exclusion because of a revoked or suspended license.  Additionally, the report indicated that Grijalva was listed as excluded on SAM with Offence Code Z1, a now-outdated code indicating exclusion from "all Federal health care programs."  *Legacy CT Codes*, U.S. Gov't Servs. Agency, SAM.gov, https://alpha.sam.gov/content/entity-information/resources/legacy-ct-codes [https://perma.cc/3VGH-6G2H].  July 20, 2011 was listed as both the charge filing date and the creation date of the SAM entry and as the disposition date of the LEIE entry.

After receiving the results of ADP's background check, TRC revoked Grijalva's contingent offer of employment. Grijalva attempted to dispute the information in her report with ADP but was unsuccessful.

## B.

Grijalva filed a class action complaint against ADP in the United States District Court for the District of Arizona, alleging that ADP systematically and willfully included outdated adverse information in its background reports in violation of the FCRA.  At the close of discovery, the parties filed cross-motions for summary judgment.  The district court granted ADP's motion and denied Grijalva's motion. Although it concluded that ADP's report did not violate the FCRA as a matter of law, the court noted that the case presented a matter of first impression.

The district court first concluded that Grijalva's exclusion from participation in federal health care programs

could be reported at any time because it was an "active or ongoing" event. The court reasoned that the seven-year time limit contained in § 1681c(a)(5) did not apply because Grijalva's exclusion was an ongoing event.

Next, the district court determined that ADP permissibly reported the reason for Grijalva's exclusion. It considered and rejected Grijalva's arguments that *Moran I*, 943 F.3d 1175, and *Serrano v. Sterling Testing Systems, Inc.*, 557 F. Supp. 2d 688 (E.D. Pa. 2008), compelled a different conclusion. It observed that § 1685c(a)(1)–(4) prohibits a CRA from reporting certain obsolete public records and does not "distinguish between the fact of the record and the record itself," and it reasoned that § 1685c(a)(5) must operate similarly. It also considered Federal Trade Commission (FTC) guidance, *see* Fed. Trade Comm'n, *40 Years of Experience with the Fair Credit Reporting Act*, 2011 WL 3020575 (2011) [hereinafter *40 Years Report*], and determined that it provided no support for parsing certain details out of a public record that could otherwise be reported. Further, the district court believed that adopting Grijalva's argument would produce "absurd results" because disclosing her exclusion necessarily involved disclosing underlying wrongdoing.

Lastly, the district court concluded in the alternative that, even if ADP had violated the FCRA, it would not be liable to Grijalva. Crucially, it determined that ADP's interpretation of the FCRA was not objectively unreasonable. Therefore, ADP did not act willfully or negligently—a prerequisite for FCRA liability.

## II.

This court reviews de novo a district court's grant of summary judgment. *Johnson v. Barr*, 79 F.4th 996, 1003

(9th Cir. 2023) (citing *Animal Legal Def. Fund v. FDA*, 836 F.3d 987, 988 (9th Cir. 2016) (en banc)).   "Pursuant to Federal Rule of Civil Procedure 56(c), we 'view the evidence in the light most favorable to the nonmoving party, determine whether there are any genuine issues of material fact, and decide whether the district court correctly applied the relevant substantive law.'"   *Id.* (quoting *Animal Legal Def. Fund*, 836 F.3d at 988).

## III.

"The FCRA seeks to protect consumers by limiting the type of information a CRA may disclose about an individual."  *Moran I*, 943 F.3d at 1182.  It prohibits the disclosure of, inter alia, "[c]ivil suits, civil judgments, and records of arrest that, from date of entry, antedate the report by more than seven years or until the governing statute of limitations has expired, whichever is the longer period" and "[p]aid tax liens which, from date of payment, antedate the report by more than seven years."  15 U.S.C. § 1681c(a)(2)–(3).  As relevant here, it also contains a catchall provision prohibiting the disclosure of "[a]ny other adverse item of information, other than records of convictions of crimes[,] which antedates the report by more than seven years." § 1681c(a)(5).

"Under the FCRA, only negligent or willful violations are actionable . . . ."  *Marino v. Ocwen Loan Servicing LLC*, 978 F.3d 669, 671 (9th Cir. 2020).  "To prove a negligent violation, a plaintiff must show that the defendant acted pursuant to an objectively unreasonable interpretation of the statute."  *Id.* at 673 (citing *Syed v. M-I, LLC*, 853 F.3d 492, 505 (9th Cir. 2017)).  "To prove a willful violation, a plaintiff must show not only that the defendant's interpretation was objectively unreasonable, but also that the

defendant ran a risk of violating the statute that was substantially greater than the risk associated with a reading that was merely careless." *Id.* (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007)).

"Under either the negligence or willfulness standard, when the applicable language of the FCRA is 'less than pellucid,' a defendant will nearly always avoid liability so long as an appellate court has not already interpreted that language." *Id.* at 673–74 (internal citation omitted) (quoting *Safeco*, 551 U.S. at 70).   "Thus, in nearly every case involving unclear statutory language, an appellate court may dispose of the appeal by concluding that the defendant did not negligently or willfully violate the statute." *Id.* at 674. But we have previously "stress[ed] that, to prevent the law in this area from stagnating, courts should be reluctant to skip to the negligence or willfulness issue without answering the threshold question of whether the defendant violated the FCRA." *Id.* at 671.

## A.

As Grijalva notes, the "consumer[-]oriented objectives" of the FCRA "support a liberal construction" of the statute. *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (explaining that the FCRA was designed to protect consumers from inaccurate reporting and to establish accurate, confidential, and responsible credit reporting practices).  Applying this standard, we nonetheless hold that Grijalva's exclusion is an ongoing adverse event that, under § 1681c(a)(5), may be reported for its duration and for seven years after its termination.

Grijalva argues that our holding in *Moran I* compels a different result.  In that case, a CRA prepared a "tenant screening report" on an individual who applied to rent an

apartment in 2010. 943 F.3d at 1178. That report disclosed that the prospective tenant had "four criminal matters in his background," including a "misdemeanor charge for being under the influence of a controlled substance" that was entered in 2000 and dismissed in 2004. *Id.* The parties agreed that Moran's charge was "an 'adverse item of information' and thus [fell] under § 1681c(a)(5)" but "disagree[d] on which date trigger[ed] the seven-year reporting window—the date of entry of [the] charge or the date of dismissal of [the] charge." *Id.* at 1182. We held that the date of entry triggers the seven-year window for a criminal charge, and thus "[t]he [2010] [r]eport's inclusion of the 2000 [c]harge fell outside of the permissible seven-year window." *Id.* at 1186. We also held that "the dismissal of a charge does not constitute an independent adverse item and may not be reported after the reporting window for the charge has ended." *Id.* Grijalva argues that her exclusion is akin to the criminal charge in *Moran I*, and that therefore the hypothetical *end* of her exclusion would not constitute an adverse event. Therefore, she reasons, the seven-year reporting period must begin to run at the *start* of her exclusion.

Grijalva also relies on *Serrano*, an out-of-circuit district court decision, to support her argument that her exclusion is not an ongoing adverse event. There, a CRA compiled a background check on an individual applying for employment; during that process, it discovered arrest records that were over seven years old. *Serrano*, 557 F. Supp. 2d at 689. The CRA then informed the potential employer of the existence of these arrest records—without providing the records themselves. *Id.* at 689–90. The court in *Serrano* concluded that disclosing the *existence* of arrest records constitutes the disclosure of adverse information under

either § 1681c(a)(2) or § 1681c(a)(5) and gives rise to "a claim under the FCRA." *Id.* at 692–93.

In response, ADP argues that Grijalva's exclusion is continuing and ongoing. It compares her exclusion to other ongoing adverse events, such as confinement, an open warrant, or an unpaid lien. And it notes that the ongoing nature of Grijalva's exclusion has ongoing consequences: Neither Grijalva nor her employer can receive payments from federal health care programs for as long as she remains excluded.

We agree with the Arizona district court's analysis of this issue. Grijalva's argument that *Moran I* stands for a broad rule that the reporting period for any adverse event that spans a period of time starts when the event begins is unpersuasive. This argument stretches *Moran I* far beyond its holding "that the seven-year reporting window for a criminal charge begins on the date of entry." 943 F.3d at 1186. And the ongoing nature of Grijalva's exclusion is unlike an arrest, *Serrano*, 557 F. Supp. 2d at 693, which is fixed in time. The district court rightly concluded that Grijalva's exclusion was akin to an unpaid lien, which would not become unreportable merely because it remained unpaid for over seven years. This analogy squares with the FTC's guidance on liens and the FCRA.[3] Specifically, the FTC has

---

[3] We have previously characterized the FTC's view on matters related to the FCRA as "informative" because it was formerly "the agency responsible for enforcing the FCRA." *See Moran I*, 943 F.3d at 1186, 1182–83. That responsibility has since been reassigned to the Consumer Financial Protection Bureau (CFPB). *See Shaw v. Experian Info. Sols. Inc.*, 891 F.3d 749, 752 n.1 (9th Cir. 2018). "Although the FTC is no longer charged with the FCRA's interpretation," we still found "the FTC's reasoning persuasive." *Zabriskie v. Fed. Nat'l Mortg. Ass'n*, 912

commented that unsatisfied liens "may be reported as long as they remain filed . . . and remain effective," while "[a] lien that is paid or otherwise terminated may be reported for seven years from the date it is paid or otherwise rendered ineffective." *40 Years Report*, 2011 WL 3020575, at *50.

Grijalva attempts to distinguish her case from one involving an unpaid lien by arguing that her exclusion creates no rights or obligations between herself and HHS-OIG, whereas an unpaid lien gives the lien holder the right to collect from the obligor. Similarly, she attempts to distinguish her exclusion from an open warrant by arguing that an open warrant allows the government to effectuate an arrest or search against the warrant's subject, thus creating the potential for action. She instead compares her exclusion to a mere delinquent account not placed for collection or charged to profit and loss, which the FTC has instructed "may be reported for seven years from the date of the *commencement* of the delinquency." *40 Years Report*, 2011 WL 3020575, at *50 (emphasis added). Grijalva's comparisons are inapt. A delinquent account not placed for collection suggests that no one is attempting to attach consequences to its delinquency while here, in contrast, HHS-OIG's exclusion actively prevents Grijalva or her employer from receiving federal funds. The consequences attached to Grijalva's exclusion make it more like an unpaid lien than a delinquent account.

This conclusion is further supported by the structure of the statutory scheme in 42 U.S.C. § 1320a-7(c)(3), which

F.3d 1192, 1197 (9th Cir.) (citing the *40 Years Report*), *amended and superseded on denial of reh'g*, 940 F.3d 1022 (9th Cir. 2019); *see also Zabriskie v. Fed. Nat'l Mortg. Ass'n*, 940 F.3d 1022, 1027 (9th Cir. 2019) (continuing to cite the *40 Years Report*).

specifies differing lengths of exclusion depending on the underlying rationale.  For example, an individual convicted of fraud (and excluded pursuant to §1320a-7(b)(1)) "shall" be excluded for three years.  § 1320a-7(c)(3)(D).  In contrast, individuals like Grijalva, excluded under § 1320a-7(b)(4), "shall not" be excluded for "less than the period during which the individual's . . . license to provide health care is revoked, suspended, or surrendered."  § 1320a-7(c)(3)(E).  Congress decided that individuals excluded based on the revocation of their license should be excluded for *as long as* their license remains revoked.  *See id.*  Treating Grijalva's exclusion as anything other than ongoing would contradict the plain text of the statute.  If Congress wanted Grijalva's exclusion to eventually grow stale, it could have placed a time limit on it—as it did for other exclusion rationales.

Because Grijalva's exclusion is ongoing, ADP did not violate 15 U.S.C. § 1681c(a)(5) by disclosing it in her background report.  There remains, however, another issue: whether ADP was permitted to disclose the reason that Grijalva was excluded, specifically that her nursing license was revoked in 2011.

## B.

The district court summarized the issue as follows: "[D]oes the cause of [Grijalva's] exclusion become obsolete after seven years even though the exclusion itself may not?"  The district court characterized this inquiry as a closer question, but it concluded that, for the purposes of the FCRA, there was no meaningful distinction between Grijalva's exclusion from federal health care programs and the underlying cause of her exclusion.  We disagree.

The district court was unpersuaded by Grijalva's argument that the revocation of her nursing license

constituted a separate adverse event from her exclusion.[4]  In its view, *Moran I* and *Serrano* did not support such a distinction; instead, these cases stood for the reasonable but limited proposition that a CRA cannot indirectly report adverse information.  It found no suggestions otherwise in the statute's plain text or our caselaw.  It concluded that "[t]he incidental details of [Grijalva's] exclusion—the date it began and the statute code and subsection title—are part and parcel with the exclusion itself."  To the district court, Grijalva's exclusion and its underlying cause constituted a public record that ADP could permissibly report in its entirety.

We do not view Grijalva's license revocation as synonymous with her exclusion.  To start, her exclusion from federal health care programs was permissive, not mandatory.  *See* 42 U.S.C. § 1320a-7(a)–(b).  HHS-OIG decided to conduct an administrative process to exclude Grijalva, *see* note 1 *supra*, and that process should be considered a separate adverse event from her license revocation.  This interpretation squares with the CFPB's advice that "the plain language of" 15 U.S.C. § 1681c(a)(5) "makes clear" that "*each adverse item of information* is subject to its own seven-year reporting period."[5]  89 Fed. Reg. 4171-01, 4175 (emphasis added).  It is also consistent with our "liberal construction" of the statute to protect

---

[4] It is undisputed that ADP's report establishes that Grijalva was excluded because her license was revoked.  The report used those words, and it cited statutes and codes that conveyed the same information.

[5] Although Grijalva's license revocation is relevant to her subsequent exclusion, relevance is not enough to justify treating these two events as one.  *See Moran I*, 943 F.3d at 1184 ("A related later event should not trigger or reopen the [reporting] window, as the adverse event already occurred.").

consumers.  *Moran I*, 943 F.3d at 1186 (quoting *Guimond*, 45 F.3d at 1333).

Even if we agreed with the district court that Grijalva's exclusion and its underlying cause constitute a single public record, components of a public record can become outdated under the FCRA even if the complete record has not.  *See Dunford v. Am. DataBank, LLC*, 64 F. Supp. 3d 1378, 1394 (N.D. Cal. 2014) (reasoning that, even though the dismissal of certain counts of an indictment is often a bargained-for exchange leading to a plea bargain, those dismissed counts "must be combed out and go unreported" seven years after their charging date).[6]  The revocation of Grijalva's nursing license, unlike her ongoing exclusion, is fixed in time and antedated her background report by over seven years.  *See Moran I*, 943 F.3d at 1184; *Serrano*, 557 F. Supp. 2d at 692–93.  Thus, ADP should not have disclosed this event when it disclosed Grijalva's ongoing exclusion.

We also disagree with the district court's conclusion that Grijalva's interpretation of § 1681c(a)(5) results in absurdity.  The district court believed that Grijalva's reading of the statute would permit ADP to report that she was excluded and simultaneously prohibit ADP from reporting her exclusion because it implies an underlying and obsolete fact.  But it is possible to disclose a consequence without disclosing its underlying rationale when the consequence has more than one possible cause.  And here, as Grijalva points out, 42 U.S.C. § 1320a-7 specifies twenty-one different grounds for an exclusion, any one of which could have been

---

[6] In *Moran I*, we cited approvingly to *Dunford* and its "finding that a dismissed charge is an adverse item and was improperly included in a consumer report."  943 F.3d at 1184 n.7.

the underlying reason that HHS-OIG excluded her from federal health care programs.

The district court rejected Grijalva's distinction between cause and consequence as unpersuasive, in part, because it assumed that reporting her exclusion would necessarily require reporting that she was excluded pursuant to § 1320a-7(b)(4)—a subsection entitled "[l]icense revocation or suspension."  In the district court's view, reporting the subsection title did nothing more than save TRC the step of looking up the statute.  But ADP could have simply reported that Grijalva was indefinitely excluded under § 1320a-7 without listing the specific statutory subsection that authorized her exclusion, thereby disclosing the exclusion without disclosing the outdated license revocation.[7]

In sum, Grijalva is correct that ADP disclosed two discrete pieces of adverse information about her.  First, it disclosed her ongoing exclusion from federal health care programs.  This disclosure was permissible under the FCRA.  Second, it disclosed that her ongoing exclusion was based on the revocation of her nursing license over seven years ago.  Reporting this piece of adverse information violated 15 U.S.C. § 1681c(a)(5).  ADP, however, is not liable for violating the FCRA because its violation was neither negligent nor willful.

## C.

We affirm the district court's grant of summary judgment to ADP because ADP's violation of the FCRA was

---

[7] If Grijalva's license revocation were not outdated, ADP could have permissibly disclosed the statutory basis for her exclusion.

neither negligent nor willful, and therefore, ADP cannot be liable to Grijalva.

Grijalva argues that the district court erred in two ways when it found a lack of willfulness.[8]  First, she argues that willfulness under the FCRA is a mixed question of law and fact that must be resolved by a jury.  Second, she argues that the court's ruling in *Moran I* so clearly prohibited ADP's actions that its violation of the FCRA was willful.  Neither argument is persuasive.

We agree with the district court that the objective reasonableness of a legal interpretation is a matter of law, regardless of whether willfulness may be a question of fact. *See Syed*, 853 F.3d at 504 (rejecting the parties' assumption that "an objectively unreasonable interpretation of the FCRA is by definition a reckless one," and concluding, as a matter of law, that a defendant's interpretation of the FCRA was "objectively unreasonable"); *Taylor v. First Advantage Background Servs. Corp.*, 207 F. Supp. 3d 1095, 1110–11 (N.D. Cal. 2016) (collecting cases treating willfulness as a question of fact).  Moreover, Grijalva's counsel conceded at oral argument that the reasonableness of a statutory interpretation is a question of law.

An interpretation of the FCRA that contradicts plain statutory text is objectively unreasonable, even if the case is a matter of first impression.  *See Syed*, 853 F.3d at 504.  But "when the applicable language of the FCRA is 'less than pellucid,' a defendant will nearly always avoid liability so long as an appellate court has not already interpreted that

---

[8] In her briefing, Grijalva did not argue that ADP's alleged violation was negligent.  At oral argument, counsel clarified that Grijalva was suing under both theories.  We conclude that ADP was neither willful nor negligent.

language." *Marino*, 978 F.3d at 673–74 (internal citation omitted) (quoting *Safeco*, 551 U.S. at 70).

As a matter of law, ADP's interpretation of the FCRA was not unreasonable. Whether ADP's interpretation was correct does not determine whether it was objectively unreasonable. *See Safeco*, 551 U.S. at 69–70; *Moran v. Screening Pros, LLC* (*Moran II*), 25 F.4th 722, 729 (9th Cir. 2022). The relevant provision, 15 U.S.C. § 1681c(a)(5), does not define the phrase "[a]ny other adverse item of information." As the district court observed, this case does not present simple questions. Faced with a "dearth of guidance" and "less-than-pellucid statutory text," *Safeco*, 551 U.S. at 70, ADP's interpretation that it was permitted to disclose the underlying reason for Grijalva's ongoing exclusion from federal health care programs was not unreasonable.

Having determined that, as a matter of law, ADP's interpretation of the FCRA was not objectively unreasonable, we also conclude that no reasonable jury could find that ADP's violation of the FCRA was negligent or willful. *See Syed*, 853 F.3d at 505; *Moran II*, 25 F.4th at 730. Our conclusion that ADP's interpretation was not objectively unreasonable is sufficient to make this determination. *Marino*, 978 F.3d at 673. Nonetheless, two additional considerations support that determination. First, ADP introduced uncontroverted expert testimony that its interpretation was consistent with industry practices. *See Moran II*, 25 F.4th at 730 (concluding that the record did not support a finding that "Defendant's violation of § 1681c(a)(5) was negligent, much less willful," because, inter alia, "Defendant introduced evidence that its interpretation was consistent with industry norms"). Second, the district court agreed with ADP's interpretation

of the FCRA.  *See Safeco*, 551 U.S. at 70 n.20 (noting that "Congress could not have intended" to hold defendants liable for following an interpretation of the FCRA "that could reasonably have found support in the courts"); *Moran II*, 25 F.4th at 730 (holding that a violation of the FCRA was not "negligent, much less willful" because, among other reasons, (1) the district court "initially held that Defendant misread § 1681c(a)(5), but then reversed that holding on reconsideration," and (2) an appellate judge dissented on the basis of diverging statutory interpretation in the case's prior appeal).  On this record, no "reasonable fact finder" could conclude that ADP negligently or willfully violated the FCRA.  *Moran II*, 25 F.4th at 730.

## IV.

ADP did not violate the FCRA when it disclosed Grijalva's ongoing exclusion from participating in federal health care programs as part of her background check, but it did violate the FCRA when it disclosed that Grijalva was excluded because her nursing license was revoked over seven years before it issued its report.  ADP, however, is not liable for its violation of the FCRA because it did not negligently or willfully violate the statute.

**AFFIRMED.**

CLIFTON, Circuit Judge, concurring in part and concurring in the judgment:

I agree with the majority that ADP did not violate 15 U.S.C. § 1681c(a)(5) by disclosing the fact of Tracie Ann Grijalva's exclusion from federal health care programs. I also agree that ADP did not act negligently or willfully. I join those portions of the majority opinion. I disagree, however, with the majority opinion that ADP violated the Fair Credit Reporting Act (FCRA) by reporting the reason for Grijalva's exclusion, that her nursing license had been revoked.

Though disclosure of the revocation would be prohibited as a separate item of information, in this instance it cannot be viewed solely as a separate item. As my colleagues and I have all agreed, disclosure of the fact of Grijalva's exclusion from federal health care programs did not violate the FCRA, although the exclusion initially occurred more than seven years before the date of the ADP report, because of the ongoing nature of that exclusion. In my view, explaining the reason for that exclusion is of a piece with the exclusion itself. The language and logic of the FCRA does not prohibit that reason's disclosure any more than it prohibits disclosure of the exclusion.

On that question, I agree with the district court when it observed: "The incidental details of Plaintiff's exclusion— the date it began and the statute code and subsection title— are part and parcel with the exclusion itself." Grijalva cannot currently act as a nurse in Arizona because her nursing license was revoked. That revocation has current relevance to her ongoing exclusion from federal health care programs because it explains the basis for that exclusion.

The majority notes that *Moran v. Screening Pros, LLC*, 943 F.3d 1175 (9th Cir. 2019), understood a dismissed charge to be an adverse item of information and thus was improperly included in a consumer report. In the process, *Moran* recognized that different events can be understood as one composite event under the FCRA's seven-year limitation on reporting "[a]ny other adverse item of information." 15 U.S.C. § 1681c(a)(5). In *Moran*, we held that the date of a criminal charge begins on the "date of entry," as distinguished from the date of the charge's dismissal. 943 F.3d at 1182, 1184. The consumer reporting agency there violated the FCRA by reporting the dismissal of a criminal charge whose date of entry occurred more than seven years earlier. "Both events must be considered as part of the same criminal record." *Id.* at 1184. "Reporting the dismissal alone would reveal the existence of the charge," we added, and "the dismissal of a charge does not constitute an independent adverse item" of information. *Id.* at 1184, 1186. In other words, the consumer reporting agency violated § 1681c(a)(5) by reporting the dismissal because the dismissal and the initial date of entry of the underlying criminal charge were of a piece.

Grijalva's license revocation and her exclusion from federal programs are similarly connected. In this case, disclosing the earlier revocation is relevant to explaining the continuing exclusion. Grijalva's listings on the Department of Health and Human Services' List of Excluded Individuals and Entities and the General Services Administration's System of Award Management, though they initially occurred more than seven years earlier, may be included in the report. The underlying reason for her exclusion relates to that continuing exclusion.

The majority says, at 15, that the reason for Grijalva's exclusion is not "synonymous with her exclusion" because her exclusion from federal health care programs was permissive, not mandatory, and because a separate federal process led to the decision to exclude Grijalva. That would be logical if the decision had been that she was *not* put on the excluded list. In that event, there would be no continuing exclusion and thus no legitimate reason to disclose the previous revocation of her nursing license. But that was not the federal decision. Instead, the decision was that she would be excluded from federal health care programs. Indeed, that it took a separate process and that the federal exclusion decision was permissive, not mandatory, makes the reason for the federal decision even more important and certainly not less relevant in providing context for the basis for the decision. If that decision may properly be disclosed in the ADP report because of the ongoing effect of the exclusion, it is illogical to conclude that the basis for the decision is not currently relevant simply because more than seven years have passed. If the decision is still relevant, so is the reason for it.

The majority opinion also cites in support, at 15, the Consumer Financial Protection Bureau's (CFPB) interpretation of 15 U.S.C. § 1681c(a)(5): "As the plain language . . . makes clear, each adverse item of information is subject to its own seven-year reporting period." Fair Credit Reporting; Background Screening, 89 Fed. Reg. 4171, 4175 (Jan. 23, 2024). That guidance begs the question of whether the reason for Grijalva's exclusion may only be considered a separate adverse item or whether it is properly viewed in addition as part of the exclusion that can properly be reported even years later. The CFPB's interpretation is merely

consistent with the FCRA's prohibition on, as the district court said, "indirectly reporting obsolete information."

Disclosure of the reason for a person's exclusion from federal health care programs would better advance the FCRA's purpose of protecting those who are the subject of the background reports. The majority holds that ADP could properly report Grijalva's exclusion from federal health care programs but not the specific ground on which she was excluded. But preventing disclosure of the reason for Grijalva's ongoing exclusion would likely have harmful consequences for other individuals in her position. A reviewing employer receiving a report that the individual being considered for employment was excluded from federal health care programs without being informed of the reason for the exclusion would likely assume the worst. The statute under which Grijalva was excluded, 42 U.S.C. § 1320a-7(b), has seventeen grounds on which the Health and Human Services Office of Inspector General may seek a person's exclusion from federal health care programs. They include engaging in fraudulent activity, obstructing investigations, or being convicted of a misdemeanor related to a controlled substance. *Id.* § 1320a-7(b)(1)-(3). They also include actions that may be less indicative of dishonesty such as failing to disclose information or defaulting on loans or scholarships. *See id.* § 1320a-7(b)(9), (10), (14). Someone excluded from federal health care programs for a ground that is less concerning to a potential employer would be grouped together with others excluded for more serious violations. Job applicants excluded for some of the less serious grounds might consequently be harmed. A prospective employer looking at someone's exclusion, without the additional context of the reason for that exclusion, may decline to

investigate further on its own and instead reject the applicant and move on to the next one.

I would hold not only that ADP did not violate the FCRA in reporting Grijalva's exclusion from federal health care programs, but also that it did not violate the FCRA in reporting the *reason* for her exclusion. I concur in part and concur in the judgment.